# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHAUNA PALMER,

     Plaintiff,

     v.

GMAC COMMERCIAL MORTGAGE,

     Defendant.

Civil Action No. 08-1853 (CKK)

## MEMORANDUM OPINION
(June 25, 2009)

This lawsuit arises out of a home mortgage loan transaction between Plaintiff Shauna Palmer and Defendant Homecomings Financial LLC ("Homecomings").[1] Palmer refinanced her existing home mortgage loan in April 2007, and she alleges that Homecomings violated various statutes and regulations by, among other things, charging her fees that were unrelated to the work performed in connection with her loan. She seeks reformation or rescission of the loan as well as damages. Homecomings has responded by filing a Motion to Dismiss, which the parties have fully briefed. Homecomings also filed a [5] Motion to Establish Reasonable Rescission Procedures in response to Palmer's claim under the Truth in Lending Act, which the Court shall address separately below. After a thorough review of the parties' submissions, applicable case law and statutory authority, and the record of the case as a whole, the Court shall GRANT-IN-PART and DENY-IN-PART Homecomings's [6] Motion to Dismiss, and dismiss Counts II, III, and IV, for the reasons that follow.

---

[1] The parties agree that Homecomings was improperly named as "GMAC Commercial Mortgage" in the caption of Palmer's Amended Complaint, which Palmer has not yet moved to correct.

## I. BACKGROUND

The following facts are drawn from the well-pleaded allegations in Palmer's Amended

Complaint, which the Court must accept as true for purposes of Homecomings's Motion to

Dismiss. *See Scandinavian Satellite Sys. v. Prime TV Ltd.*, 291 F.3d 839, 844 (D.C. Cir. 2002).

The Court shall supplement these facts with information drawn from Palmer's loan documents,

which Homecomings has attached to its Motion to Dismiss.  The Court may consider these

documents without converting Homecomings's Motion to Dismiss into one for Summary

Judgment because the loan documents are referenced in, and form the basis of, the allegations in

Palmer's Amended Complaint. *See Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999)

("where a document is referred to in the complaint and is central to the plaintiff's claim, such a

document attached to the motion papers may be considered without converting the motion to one

for summary judgment"), *aff'd*, 38 Fed App'x 4 (D.C. Cir. 2002).

On April 26, 2007, Palmer refinanced her existing first mortgage loan on her home in

Washington, D.C., with a loan from Homecomings. *See* Am. Compl. ¶ 23.  The amount of the

loan was $427,500.00 at an interest rate of 8.8127.  *See* Def.'s Mot., Ex. 1.A (Adjustable Rate

Note); *id.*, Ex. 1.C (4/12/07 Financing Agreement).[2]  Palmer paid $19,000 in points and fees in

connection with the loan.  *Id.*, 1.D (4/26/09 HUD-1 Settlement Statement).  As a result of this

transaction, Palmer received $182,970.83 in cash at closing.  *Id.*  Palmer alleges generally that

the terms of the loan were unlawful, the terms were undisclosed to her, and that she was not

---

[2] The interest rate reflected on Palmer's financing agreement and several other loan
documents is 8.1250 percent (not the 8.8127 percent reflected on her Truth-In-Lending
Disclosure Statement). *See, e.g.*, Def.'s Mot to Dismiss, Ex. 1.C (4/12/07 Financing Agreement).
Neither party addresses this discrepancy.  Viewing the facts in the light most favorable to Palmer,
the Court shall use the higher interest rate for purposes of her allegations.

properly notified of her legal right to rescind the loan transaction within three days of its consummation.  Am. Compl. ¶¶ 26-32.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (per curiam).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Id.* at 1964-65; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Instead, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations.  *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be

3

derived from the facts alleged."). However, as the Supreme Court recently made clear, a plaintiff

must provide more than just "a sheer possibility that a defendant has acted unlawfully." *Iqbal*,

129 S. Ct. at 1950. Where the well-pleaded facts set forth in the complaint do not permit a court,

drawing on its judicial experience and common sense, to infer more than the "mere possibility of

misconduct," the complaint has not shown that the pleader is entitled to relief. *Id.* at 1950.

## III. DISCUSSION

Palmer's Amended Complaint includes claims for relief under four statutes: (1) the

Home Ownership and Equity Protection Act, 15 U.S.C. § 1639, (2) the District of Columbia

Home Loan Protection Act, D.C. Code § 26-1151.01, (3) the Truth in Lending Act, 15 U.S.C. §

1601, *et seq.*, and (4) the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* The

Court shall address each of Palmer's claims in the order they were briefed by the parties.

    *A.*        *The Home Ownership and Equity Protection Act*

The Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639,

provides various protections for borrowers involved in "high cost" loan transactions. *See Cooper*

*v. First Gov't Mortg. & Investors Corp.*, 238 F. Supp. 2d 50, 54 (D.D.C. 2002). Palmer alleges

that Homecomings violated HOEPA by "engag[ing] in a pattern or practice of making loans to

borrowers with high cost mortgage loans without regard to their ability to pay." Am. Compl. ¶

38. Palmer also alleges that "Homecomings has adopted underwriting standards that do not

adequately measure ability to repay, allows exceptions to its guidelines, and does not have

sufficient verification procedures to ensure that borrower income is adequately determined and

considered." *Id.* ¶ 37. In response, Homecomings argues that Palmer's HOEPA claim must be

dismissed because her loan is not a "high cost" loan that triggers the coverage of HOEPA. *See*

Def.'s Mot. at 3.  The Court agrees with Homecomings.[3]

> HOEPA applies to "high cost" loans which, by definition, must meet one of two criteria:
>
> (A) the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or
>
> (B) the total points and fees payable by the consumer at or before closing will exceed the greater of –
>
> > (i) 8 percent of the total loan amount; or
> >
> > (ii) $400.

15 U.S.C. § 1602aa(1); *see also* 12 C.F.R. § 226.32(a).  HOEPA's implementing regulation, 12 C.F.R. § 226.32(a)(i), specifies that first-lien loans may not exceed the comparable yield on Treasury securities by "8 percentage points," whereas the "10 percentage points" reflected in the statute applies to subordinate-lien loans.  12 C.F.R. § 226.32(a)(1)(i).  Palmer's loan does not meet either of the two criteria set forth above.

With respect to the annual percentage rate ("APR") at consummation of the transaction, Palmer's APR at her closing on April 26, 2007, was 8.8127 percent.  *See* Def.'s Mot, Ex. 1.B (4/26/07 Federal Truth-In-Lending Disclosure Statement).  Because Palmer's loan was a 30-year

---

[3] Palmer's HOEPA claim appears to mistakenly rely on section 1639(f), which prohibits "terms under which the outstanding principal balance will increase at any time over the course of the loan because the regular periodic payments do not cover the full amount of interest due." 15 U.S.C. § 1639(f).  There is no allegation that Palmer's loan payments did not cover the full amount of interest due.  Palmer more likely intended to rely on section 1639(h), which prohibits creditors from "engag[ing] in a pattern or practice of extending credit to consumers . . . without regard to the consumers' repayment ability . . . ." *Id.* § 1639(h).  This provision tracks almost word-for-word the allegations in Palmer's Amended Complaint.  A claim under either provision nevertheless fails for the reasons stated in the text herein.

note, *id.*, Ex. 1.A (4/26/07 30-year Adjustable Rate Note), the Treasury security with a comparable period of maturity is a 30-year Treasury security.  The yield for a 30-year Treasury security on March 15, 2007 (the month immediately preceding the month in which the credit was received by Palmer) was 4.69 percent.[4]  *See* http://www.federalreserve.gov/releases/h15/data.htm (follow "Treasury constant maturities, 30-year" hyperlink).  Adding 8 percentage points to the 30-year treasury yield of 4.69 percent, the threshold for purposes of triggering HOEPA was 12.69 percent.  Because Palmer's APR at 8.8127 percent is nowhere near this threshold, her loan did not trigger HOEPA based on its APR.

With respect to the total points and fees payable at closing, Palmer paid $19,000.  *See* Def.'s Mot., Ex. 1.D (4/26/09 HUD-1 Settlement Statement).[5]  The principal amount of Palmer's loan was $427,500.  *Id.*  The total loan amount for purposes of HOEPA is calculated by subtracting the total points and fees from the principal amount of the loan.  *See Cooper*, 238 F. Supp. 2d at 58.  When the points and fees ($19,000) are subtracted from the principal amount of Palmer's loan ($427,500), the total loan amount equals $408,500.  Dividing $19,000 by $408,500, the amount of points and fees paid by Palmer constituted approximately 4.6 percent of her loan amount.  Because that percentage is nowhere near the 8 percent threshold, Plaintiff's loan does not trigger HOEPA based on the points and fees that she paid.

Palmer does not seriously dispute these facts, but argues generally that "the data provided

---

[4] Homecomings mistakenly referred to February 15, 2007 (instead of March 15, 2007) in its Motion to Dismiss.  *See* Def.'s Mot. at 4.

[5] Although Palmer paid $28,802.85 in total settlement charges, $9,900.53 of the charges did not constitute "points and fees" under HOEPA's definition of the same.  *See* 12 C.F.R. §§ 226.32(b)(1)(iii), 226.4(c)(7).

on the HUD-1 statement . . . greatly understate[s] the true cost of the loan." Pl.'s Opp'n at 4.

Palmer provides no facts supporting this allegation. For example, she does not identify *how* her

loan documents understate the true cost of the loan, or to what extent. This type of argument is a

quintessential conclusory allegation that the Court need not accept on a motion to dismiss. *See*

*Iqbal*, 129 S.Ct. at 1950 ("[Federal Rule of Civil Procedure] 8 marks a notable and generous

departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock

the doors of discovery for a plaintiff armed with nothing more than conclusions"). Palmer's only

remaining argument concerning HOEPA is that she "was charged an excessive rate given the

nature of her credit worthiness . . . [y]et, [she] was given a loan with a stated interest rate of

nearly nine (9) percent." Pl.'s Opp'n at 4. This argument is non-responsive because it appears to

assume that HOEPA applies in some fashion, thereby assuming the precise issue that requires

resolution. Because Palmer's loan documents indisputably demonstrate that her loan did *not*

trigger the coverage of HOEPA, her subjective belief that her interest rate was normatively

"excessive" cannot result in a HOEPA violation. According, the Court shall grant

Homecomings's Motion to Dismiss Palmer's HOEPA claim (Count II of the Amended

Complaint).

      B.     *The District of Columbia Home Loan Protection Act*

The District of Columbia Home Loan Protection Act ("HLPA"), D.C. Code § 26-

1151.01, prohibits lenders from making loans "if the borrower, at the time that the covered loan

is closed, cannot reasonably be expected to make the scheduled payments." D.C. Code § 26-

1152.02(a). Palmer alleges that Homecomings violated this act by failing to provide certain

disclosures and by engaging in several other violations related to filing and licensing

requirements.  *See* Am. Compl. ¶ 20.  Similar to the HOEPA claim discussed above,

Homecomings has moved to dismiss this claim on the basis that Palmer's loan is not a "covered"

loan that triggers the coverage of the HLPA.  *See* Def.'s Mot. at 7.  The Court again agrees.

The HLPA applies to "covered loans," as that term is defined in D.C. Code § 26-1151.01.

Covered loans, in turn, consist of "mortgage loans," defined as loans

> [f]or which the principal amount does not exceed the conforming loan size limit
> for a comparable dwelling as established and revised from time to time by the
> Federal National Mortgage Association or the Federal Home Loan Corporation.

*Id.* § 26-1151.01(14)(A)(iii).  In addition, the loan must meet one of two threshold criteria that

are similar to those discussed above with respect to HOEPA:

> (i) The loan is secured by a first mortgage on the borrower's principal dwelling
> and the annual percentage rate at closing will exceed by more than 6 percentage
> points the yield on United States Treasury securities having comparable periods of
> maturity to the loan maturity measured as of the 15th day of the month
> immediately preceding the month in which the application for the residential
> mortgage loan is received by the creditor;
>
> (ii) [a criteria not relevant to this case]; or
>
> (iii) The origination/discount points and fees payable by the borrower at or before
> loan closing exceed 5% of the total loan amount.

*Id.* § 26-1151.01(7)(A).

Homecomings correctly argues that Palmer's loan amount exceeds the conforming loan

size limit necessary to be considered a "covered loan" under the HLPA.  *See* Def.'s Mot. at 7-8.

The conforming loan size limit set by the Federal National Mortgage Association for 2007 was

$417,000.[6]  *See* http://www.fanniemae.com/aboutfm/pdf/historicalloanlimits.pdf.  The principal

---

[6] Palmer does not dispute that $417,000 was the conforming loan size limit in 2007.  *See*
Pl.'s Opp'n at 2 ("[d]uring the relevant time period, the jumbo loan limit was $417,000.00")

amount of Palmer's loan equaled $427,500.00.  *See* Def.'s Mot., Ex. 1.A (4/26/07 Adjustable

Rate Note).  Because the principal amount of the loan ($427,500) exceeds the conforming loan

size ($417,000), the HLPA does not apply to Palmer's loan.

While not directly disputing this analysis, Palmer argues that Homecomings charged her

excessive fees and points and an interest rate that was "out of line with industry standards given

[Palmer's] creditworthiness."  Pl.'s Opp'n at 3.  Accordingly, Palmer argues that

> [g]iven that [she] disputes whether the charges she incurred were valid, it would
> not be proper to include the excessive fees in calculating whether the loan is a
> 'covered loan' under the D.C. Act.  But for these excessive charges, the loan
> would squarely be protected by the [HLPA].

*Id.*  The Court rejects Palmer's argument for two reasons.  The first is that it reads into the

definition of "mortgage loan" a condition that is not included in the statute – namely, that a

mortgage loan includes only the portion of the loan amount that a borrower believes is "valid."

Not only does the statutory language not support such a condition, *see* D.C. Code § 26-1151.01

(defining "mortgage loan" by reference to its "principal amount"), but the Court is unwilling to

accept such an amorphous condition for calculating when the coverage of the HLPA is triggered.[7]

Second, even if Palmer's loan fell under the conforming loan size threshold, her loan

would still need to meet one of the two criteria for triggering the HLPA through either (1) a loan

APR of more than 10.69 percent (calculated by adding the 30-year Treasury yield as of March 15,

2009, plus 6 percent as stated in the HLPA) or (2) a loan requiring payment of fees and points

---

[7] The Court also notes that, beyond Palmer's stated belief that the fees and points
associated with her loan were too high, she fails to explain which fees and points she believes
were improper.  Without this explanation, there is an insufficient factual predicate supporting her
conclusion that her loan would fall under the conforming loan amount even if such fees and
points were deducted.

that exceeds 5 percent of the total loan amount.  As set forth above, Palmer's APR at closing was

8.8127 percent (far less than the 10.69 percent necessary to trigger the act) and the points and

fees as a percentage of her loan amount was 4.6 percent (less than the 5 percent necessary to

trigger the act).

Seeking to avoid the consequences of these facts, Palmer argues that discovery might help

her reveal facts that could allow her to proceed with her HLPA claim:

> [a]lthough very close to the violation threshold, Plaintiff disputes this calculation
> as factually accurate and must be allowed to go forward with discovery to
> determine the true amount, which Plaintiff believes is in excess of 5 percent . . .
> Plaintiff contends that when all of the facts are revealed, Plaintiff will be able to
> demonstrate that the Defendant has violated the D.C. Act.

Pl.'s Opp'n at 3.  As this argument makes clear, Palmer does not identify any specific

information in her loan documents or defects in the calculations set forth above, but simply hopes

that discovery might reveal certain other, unidentified facts.  A plaintiff cannot survive a motion

to dismiss based only on an aspiration that facts supporting a cause of action could surface in

discovery.  *Cf. Iqbal*, 129 S.Ct. at 1950.  Accordingly, the Court shall grant Homecomings's

Motion to Dismiss Palmer's HLPA claim (Count IV of the Amended Complaint).

C.      *The Truth In Lending Act*

The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, governs the terms and

conditions of consumer credit by, *inter alia*, requiring lenders to disclose certain details and

conditions pertaining to loans.  Palmer alleges that she "was required to sign a document

purporting to confirm that three days had elapsed after the loan closing, and she did not intend to

exercise her right under TILA to rescind the loan."  Am. Compl. ¶ 29.  The Court need not linger

long on this claim because this allegation is directly belied by Palmer's *signed* loan documents

10

that contain the *opposite* representation.  Specifically, Palmer signed a document titled "NOTICE OF RIGHT TO CANCEL," stating that Palmer "ha[s] a legal right under federal law to cancel [the] transaction, without cost, within THREE BUSINESS DAYS . . . ."  Def.'s Mot., Ex. 1.E (4/26/07 Notice of Right to Cancel) (emphasis in original).  Above Palmer's signature on this form is the following statement: "[t]he undersigned . . . acknowledge[s] receipt of two copies of NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement . . . ."  *Id.* (emphasis in original)

Although Homecomings identified the signed Notice of Right to Cancel Form in its Motion to Dismiss and argued that its existence directly undermined Palmer's TILA claim, *see* Def.'s Mot. at 8, Palmer ignored it entirely in her Opposition.  *See* Pl.'s Opp'n at 4-5 (arguing only that Palmer should be allowed to rescind her loan without returning the unpaid principal associated with the loan).  Where a party addresses some but not all arguments raised in a motion to dismiss, courts in this district treat such arguments as conceded.  *See, e.g.*, *Fox v. Am. Airlines, Inc.*, 295 F. Supp. 2d 56, 58 (D.D.C. 2003), *aff'd*, 389 F.3d 1291 (D.C. Cir. 2004). Accordingly, the Court shall grant Homecomings's Motion to Dismiss Palmer's TILA claim (Count III of the Amended Complaint) both on the merits and as conceded.[8]

    *D.    RESPA*

The Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*,

---

[8] Homecomings also argues that Palmer's TILA claim must be dismissed as moot because Palmer has rejected Homecomings's offer to rescind the loan.  *See* Def.'s Mot. at 8-9; Pl.'s Opp'n at 4-5.  While that may be correct to the extent that Palmer seeks only rescission as a remedy for her TILA claim (a proposition that is not entirely clear based on a review of Palmer's inartfully drafted Amended Complaint), the Court nevertheless finds that Palmer's TILA claim is subject to dismissal for the reasons set forth above without resorting to Homecomings's mootness argument.

prohibits kickbacks and unearned fees in connection with real estate loan transactions:

> (a) Business referrals.  No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

> (b) Splitting charges.  No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(a), (b).

Tracking the language of these provisions, Palmer alleges that, "[i]n the course of the transaction with Ms. Palmer, Homecomings gave, and the brokers received, a fee, kickback or thing of value pursuant to an understanding between the broker and Homecomings that the broker would refer business to Homecomings."  Am. Compl. ¶ 34.  She further alleges that "Homecomings gave the brokers a portion, split or percentage of the settlement charges collected from the borrowers, other than for services actually performed by the brokers."  *Id.* ¶ 35.  As support for these arguments, Palmer alleges that she was charged excessive fees for obtaining her loan given her credit history.  *Id.* ¶¶ 24, 25.[9]

Homecomings argues that Palmer's RESPA claim must be dismissed because she "does not allege that the broker did not actually perform its services or that the payments to the broker

---

[9] The Amended Complaint also contains various allegations concerning non-disclosure of fees.  *See, e.g.*, Am. Compl. ¶ 28 ("Ms. Palmer was not informed what the broker's total compensation would be prior to closing"); *id.* ¶ 30 ("was never told the amount of the broker fee, given a written disclosure of the fee or a written agreement, or any notice of her right to cancel the broker contract, and never agreed to pay the broker fee, at any time prior to the loan closing").  It is unclear whether Palmer intended these various allegations to be part of her RESPA claim.  Regardless, these non-disclosure allegations are summarily rejected because they are directly belied by the loan forms and other disclosures, most of which were *signed by Palmer*. *See* Def.'s Mot., Exs. 1.A - 1.J.

were not reasonably related to the services performed." Def.'s Mot. at 10.  While the Court

acknowledges that the factual support underpinning Palmer's allegations may be thin, the Court

finds that she has alleged enough facts to survive Homecomings's Motion to Dismiss as to this

claim.  In particular, she argues that "the fees charge [sic] by Defendant are outside the norm for

a borrower with the creditworthiness that the Plaintiff had."  Pl.'s Opp'n at 6 (presumably relying

on paragraphs 24 and 25 of her Amended Complaint).  Palmer reasons that these excessive fees

reflect payment for services not performed:

> Given that the exorbitant fees and points paid did not result in a lower interest rate
> more in line with industry standards, Plaintiff concludes that the fees paid did not
> reasonably relate to goods or services actually provided as required by section
> 2607 of RESPA.

*Id.*

At this stage of the litigation, the Court's role is not to assess the likelihood of success on

the merits of this claim, but rather, to assess whether Palmer has set forth enough facts to raise a

right to relief above a speculative level.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)

("a well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and

unlikely'") (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  Because Palmer alleges the

amount of fees associated with her loan were "exorbitant" given her credit score–and that these

excessive fees raise the inference that she paid monies unrelated to the work actually performed

in connection with her loan–the Court finds that Palmer has stated a claim for relief under

Section 2607 of RESPA.  Homecomings even appears to acknowledge this result by falling back

on the argument that Palmer has not pled the claim with sufficient clarity – not that she has failed

to state a claim for relief.  *See, e.g.*, Def.'s Mot. at 10 ("RESPA provides no relief for Plaintiff's

claim *as pled*") (emphasis added); Def.'s Reply at 9 ("to state a claim under § 2607, the plaintiff must allege that the total compensation paid to the broker was not reasonably related to the total value of the goods or services actually provided . . .[,] a review of the Amended Complaint does not reveal such allegations").  Because the Court finds that Palmer has sufficiently stated a claim for relief under Section 2607 of RESPA, the Court shall deny Homecomings' Motion to Dismiss Palmer's RESPA claim (Count I of the Amended Complaint).[10]

      E.    *Remaining Issues*

Two issues remain.  First, the Amended Complaint states that Palmer has brought this case pursuant to the statutes discussed above, and also the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*  Am. Compl. ¶ 2.  The Amended Complaint nevertheless fails to articulate any claim arising under the ECOA and, presumably for this reason, Homecomings did not move for dismissal of such a claim.  To ensure there is no confusion as to Palmer's remaining claims moving forward, the Court shall require Palmer to clarify whether she intended to assert a claim under the ECOA in her Amended Complaint.

Second, Homecomings filed a [5] Motion to Establish Reasonable Rescission Procedures pursuant to TILA and its implementing regulation Z, 12 C.F.R. § 226, *et seq.*, requesting that the Court dismiss Palmer's TILA claim if she refused to agree to a rescission of her loan.  *See* Def.'s Mot. for Rescission at 1-7.  Palmer filed an Opposition to this motion, arguing that the offer to rescind was "not made in good faith" because Palmer would have to return the unpaid principal

---

[10] Palmer raised a new claim in her Opposition to Homecomings's Motion to Dismiss, arguing that Homecomings is liable for failing to respond to a letter sent by Palmer "to determine whether [Homecomings] was actually the holder of the mortgage and to confirm the debt owed"). Pl.'s Opp'n at 7.  Because this claim was not even remotely pled in Palmer's Amended Complaint, it is not part of this lawsuit.

on the loan in order to complete the loan rescission.  *See* Pl.'s Opp'n at 4-5.  In this Circuit, the

return of the unpaid principal in order to rescind a loan is not unreasonable and, in fact, is

entirely appropriate.  *See, e.g.*, *Etta v. Seaboard Enterprises, Inc.*, 674 F.2d 913, 919 (D.C. Cir.

1982) ("a court may condition the granting of rescission upon plaintiff's repayment of the

principal amount of the loan to the creditor").  In any event, because Palmer has not agreed to

rescind the loan and her TILA claim has now been dismissed, the Court shall deny

Homecomings's Motion to Establish Reasonable Rescission Procedures.

## IV. CONCLUSION

For the reasons set forth above, the Court shall GRANT-IN-PART and DENY-IN-PART

Defendant's [6] Motion to Dismiss Palmer's Amended Complaint.  Accordingly, Counts II

(HOEPA), III (TILA), and IV (Home Loan Protection Act) are DISMISSED.  The Court shall

also DENY Defendant's [5] Motion to Establish Reasonable Rescission Procedures.  On or

before July 2, 2009, Palmer shall submit a Notice clarifying whether she intended to assert a

claim under the ECOA in her Amended Complaint.  An appropriate Order accompanies this

Memorandum Opinion.

Date: June 25, 2009

                                                        */s/*
                                           **COLLEEN KOLLAR-KOTELLY**
                                           United States District Judge