UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHAUNA PALMER,<br><br>    Plaintiff,<br><br>    v.<br><br>HOMECOMINGS FINANCIAL, LLC,<br><br>    Defendant. | Civil Action No. 08-1853 (CKK) |

MEMORANDUM OPINION
(January 6, 2010)

This lawsuit arises out of a home mortgage loan transaction between Plaintiff Shauna Palmer and Defendant Homecomings Financial LLC ("Homecomings"). Palmer refinanced her existing home mortgage loan in April 2007, and she claims that Homecomings violated various statutes and regulations by, among other things, charging her fees that were unrelated to the work performed in connection with her loan. This Court granted-in-part and denied-in-part Homecomings' motion to dismiss Palmer's Amended Complaint, dismissing three of Palmer's four claims but holding that Palmer stated a claim under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq*. *See* [31] Order (June 25, 2009); [32] Memo. Op. (June 25, 2009). Palmer filed a Third Amended Complaint restating her RESPA claim and asserting a claim under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691 *et seq*. Currently pending before the Court is Homecomings' motion to dismiss the Third Amended Complaint. Homecomings has asserted statute of limitations defenses with respect to both claims and further contends that Palmer has failed to state a claim for relief under the ECOA. For the reasons explained below, the Court shall GRANT Homecomings' Motion to Dismiss

Palmer's RESPA claim on statute of limitations grounds and HOLD IN ABEYANCE Homecomings' Motion to Dismiss Palmer's ECOA claim for failure to state a claim upon which relief can be granted.

## I. BACKGROUND

On April 26, 2007, Palmer refinanced her existing first mortgage loan on her home in Washington, D.C., with a loan from Homecomings. *See* Third Am. Compl. ¶ 23. Although her credit score exceeded 700, Palmer was given a loan with an adjustable rate of nearly nine percent, although she believes she qualified for a fixed rate of around six percent. *Id.* ¶ 24. Palmer paid $19,000 in points and fees in connection with the loan. *Id.* ¶ 25. Palmer claims that she was not given an opportunity to read the loan documents at closing and was not informed what her broker's total compensation would be prior to the closing. *Id.* ¶¶ 27-28. Palmer alleges generally that the terms of the loan were unlawful, predatory, and discriminatory. *Id.* ¶ 29.

Palmer initiated this action on March 13, 2008 when she filed a complaint in the Superior Court for the District of Columbia. After Palmer filed an amended complaint on October 9, 2008, Homecomings removed the case to federal court on October 27, 2008.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of

"entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 1964-65; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). However, as the Supreme Court recently made clear, a plaintiff must provide more than just "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1950. Where the well-pleaded facts set forth in the complaint do not permit a court, drawing on its judicial experience and common sense, to infer more than the "mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id.* at 1950.

### III. DISCUSSION

Palmer's Third Amended Complaint asserts two claims: (1) that Homecomings violated provisions of the Real Estate Settlement Procedures Act by giving kickbacks to Palmer's mortgage broker for the referral of business to Homecomings and giving the broker a split of the

settlement charges other than for services actually performed; and (2) that Homecomings violated the Equal Credit Opportunity Act by discriminating against Palmer on the basis of her race and/or sex. Homecomings has moved to dismiss on the ground that each of these claims is barred by the statute of limitations in their respective statutes. Palmer contends that her RESPA and ECOA claims are timely because they relate back to earlier pleadings that were timely filed. Homecomings has also moved to dismiss the ECOA claim on the ground that Palmer has failed to state a claim for relief. The Court shall address each argument in turn.

**A.     RESPA Statute of Limitations**

Palmer's Third Amended Complaint alleges violations of RESPA Section 8, 12 U.S.C. § 2607. Palmer actually alleges two separate violations of the statute: (i) giving kickbacks to mortgage brokers for the referral of business in violation of § 2607(a) and (ii) splitting settlement charges with brokers for services not actually performed in violation of § 2607(b). *See* Third Am. Compl. ¶¶ 31-32. The statute of limitations for claims under § 2607 is one year. 12 U.S.C. § 2614; *Winstead v. EMC Mortgage Corp.*, 621 F. Supp. 2d 1, 4 (D.D.C. 2009). A cause of action under § 2607 accrues on the date of the closing. *See Snow v. First Am. Title Ins. Co.*, 332 F.3d 356, 359 (5th Cir. 2003) (holding that the "date of the occurrence of the violation" language in § 2614 refers to the closing); *Winstead*, 621 F. Supp. 2d at 4. Therefore, Palmer's claim accrued in April 2007, the closing date for her refinancing. *See* Third Am. Compl. ¶ 23. Palmer first stated her RESPA claim in the Amended Complaint filed on October 9, 2008. *See* [22] Am. Compl. ¶¶ 33-36. Palmer does not dispute that this was more than one year after her claim accrued. Rather, she argues that the RESPA claim in her Amended Complaint relates back to the filing of her original Complaint, which was filed within a year of the closing. *See* Pls.' Mem.

Opp'n to Def.'s Mot. to Dismiss ("Opp'n") at 7.

Palmer's original Complaint, filed *pro se*, is not a model of clarity. Among the numerous claims it asserts are breach of contract, transacting business without a certificate of authority, misrepresentation, constructive fraud, quasi-contract and unjust enrichment, conversion, gross negligence, and unlawful entry and detainer. *See* Opp'n, Ex. 1 (Complaint) at 7-10. The crux of its allegations, however, is that the Defendant[1] "is not the actual and/or legal holder of the debt [Palmer] owe[s]" and therefore cannot foreclose on the property. *See id.* at 1, 6; *see also id.* at 4 ("From the Defendants' own records they have shown that it is impossible for them to currently be the holder of this note."). The Complaint alleges that Defendant sold the mortgage and promissory note to a government sponsored enterprise several months after the closing and therefore no longer owns the debt. *Id.* at 1-2. It then goes on to state that

> Pursuant to the Defendant's Liability for <u>Failure to Comply with any provision of Section 6 RESPA (24 CFR 3500.21) and the terms of the note</u> involving **mortgage servicing transfers:**
>
> During Discovery, the Plaintiff will request the information including, but not limited to these items below, which will prove that the facts are clear and undisputable in favor of the Plaintiff. . . .

Compl. at 2 (emphasis original). What follows is a list of the information that would be sought during discovery, which includes certified copies of the mortgage and promissory note, the name of the government sponsored enterprise with whom the servicer was contracting, and various public filings. *Id.* at 2-3. The language quoted above is the only mention of RESPA in the entire

---

[1] Palmer initially named GMAC Commercial Mortgage as a defendant, but the parties agree that the proper defendant is Homecomings Financial, LLC, who is properly named as such in the Third Amended Complaint. The Court shall therefore refer to the Defendant at all times as "Homecomings."

Complaint.

Relation back is governed by Federal Rule of Civil Procedure 15(c), which states in pertinent part that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. Proc. 15(c)(1). "[A]n amendment that 'attempts to introduce a new legal theory based on facts different from those underlying the timely claims' does not relate back." *Jones v. Bernanke*, 557 F.3d 670, 674 (D.C. Cir. 2009) (quoting *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002)). Nor does an amended claim that has some elements and facts in common with the original claim relate back if the "whole thrust of the amendments is to fault [the defendants] . . . for conduct different from that identified in the original complaint." *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C. Cir. 2008). The Supreme Court has recently clarified that relation back is improper when the amended claim "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). The key question is whether the defendant had reasonable notice of the new claim based on the original pleading. *La. Wholesale Drug Co. v. Biovail Corp.*, 437 F. Supp. 2d 79, 87 (D.D.C. 2006).

Palmer argues that relation back is appropriate because her original Complaint stated a RESPA claim and the Amended Complaint merely elaborated upon that claim. *See* Opp'n at 7. On its face, the original Complaint does not appear to actually assert a RESPA claim. However, the Court must liberally construe the allegations in favor of Palmer because her Complaint was filed *pro se*. *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008). Under that

liberal standard, the suggestion on page 2 of the Complaint that Homecomings had "liability for Failure to Comply with any provision of Section 6 RESPA (24 CFR 3500.21)" is sufficient to state a claim for a RESPA violation. However, the claim asserted is a violation of RESPA Section 6, 12 U.S.C. § 2605, relating to the servicing of mortgage loans, not a violation of RESPA Section 8, as asserted in the Amended Complaint. RESPA Section 6 requires mortgage lenders to disclose to loan applicants whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding and imposes specific notice requirements when such a transfer occurs. *See* 12 U.S.C. § 2605. Palmer's original Complaint therefore appears to charge that Homecomings failed to disclose to her either that her loan could be transferred or that it subsequently was transferred.

Careful scrutiny of the original Complaint reveals, however, that Palmer did not include any allegations pertaining to excessive fees or the arrangement between Homecomings and any mortgage broker. Indeed, the only statements that could plausibly be interpreted as pertaining to misrepresentations made at the closing are conclusory allegations embedded in the counts for the other listed causes of action. For example, in the "Breach of Contract" count, Palmer claims that "[t]he Bank had a legal obligation to the Owner to disclose information that may affect the Owner" and that "[t]he Bank breached that obligation by hiding critical information about the contracted transaction." Compl. at 8. In the "Constructive Fraud" count, Palmer claims that "[t]he Bank made a false representation(s) of material fact . . . ." *Id.* at 9. However, these allegations can only be logically interpreted as relating to the central thrust of the original Complaint—that Homecomings is not the legal owner of the debt and therefore cannot foreclose on it.

The "conduct, transaction, or occurrence" language of Rule 15(c) cannot be interpreted so broadly as to apply to all of the parties' actions regarding the refinancing agreement. *See Mayle v. Felix*, 545 U.S. at 660-64 (rejecting the view that an entire criminal trial could constitute a transaction or occurrence for the relation back of a habeas petition amendment). The RESPA claim asserted in the Amended Complaint "differs in both time and type" from the claims set forth in the original Complaint because it focuses on alleged agreements between Homecomings and the mortgage broker and fees that were imposed at the closing. The original Complaint focuses on a different set of facts and a different set of claims pertaining to the transfer of ownership of the loan after the closing. Homecomings could not have reasonably anticipated that a RESPA claim based on dealings with mortgage brokers would become part of the litigation based on the facts Palmer alleged in the Complaint. Accordingly, Palmer's RESPA claim does not relate back to the filing of her original Complaint and is time-barred. The Court shall therefore grant Homecomings' motion to dismiss Palmer's RESPA claim.

**B.     ECOA Statute of Limitations**

Palmer's Third Amended Complaint raises, for the first time, a claim under the Equal Credit Opportunity Act. *See* Third Am. Compl. ¶¶ 35-46. The statute of limitations for claims under the ECOA is two years from the date of the occurrence of the violation. 15 U.S.C. § 1691e(f); *Stovall v. Veneman*, 394 F. Supp. 2d 21, 25 (D.D.C. 2005). Palmer alleges that Homecomings violated the ECOA by discriminating against her in the terms of the loan that she was offered. *See* Third Am. Compl. ¶¶ 37-46. Therefore, her cause of action under the ECOA accrued no later than April 2007, when she signed the loan documents. *See Mills v. Equicredit Corp.*, 294 F. Supp. 2d 903, 909 (E.D. Mich. 2003) ("Any violation of the [ECOA] occurred on

the dates that the Plaintiffs signed the loan agreements."). Palmer filed her Third Amended Complaint on July 9, 2009, more than two years after she obtained the loan.

Palmer contends that her ECOA claim is timely because it relates back to the filing of her Amended Complaint. *See* Opp'n at 4. As this Court noted in its June 25, 2009 Memorandum Opinion, the Amended Complaint states that Palmer brought her case pursuant to various statutes, including the ECOA. *See* Am. Compl. ¶ 2. However, Palmer failed to actually articulate any ECOA claim in the Amended Complaint. Accordingly, this Court required Palmer to clarify whether she actually intended to assert such a claim in her Amended Complaint. *See* [32] Memo. Op. at 14; [31] Order (June 25, 2009). Palmer subsequently filed a [34] Notice of Clarification indicating that Palmer intended to pursue her ECOA claim, and shortly thereafter filed her Third Amended Complaint explicitly containing that claim.

As with the RESPA claim, Homecomings contends that Palmer's ECOA claim does not relate back because it is not based on the same conduct, transaction, or occurrence as that alleged in the earlier pleading. *See* Def.'s Reply at 4. Unlike the original Complaint, however, the Amended Complaint filed in October 2008 states claims directly related to the refinancing transaction that underlies Palmer's ECOA claim. Specifically, the factual allegations in the Amended Complaint include the following:

> 24. Although [Palmer's] Credit Score was in excess of 700, she was given a loan with an interest rate in excess of 8.00 percent. This is well in excess of the normal rate for borrowers with her credit history.
>
> 25. In addition, Ms. Palmer was charged excessive fees for obtaining the loan.
>
> . . .
>
> 31. As a result of the refinance transaction, Ms. Palmer went from having a

> reasonable mortgage payment to undertaking to pay an excessive amount.
>
> 32. GMAC and Homecomings Financial engaged in fraudulent or deceptive conduct in their dealings with Ms. Palmer, including, but not limited to . . . [f]unding the loan at an excessive lending rate.

Am. Compl. ¶¶ 24-25, 31-32.  In addition, the Amended Complaint stated claims under RESPA, the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. §§ 1602 *et seq.*, the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, and the Home Loan Protection Act of 2002, D.C. Code § 26-1151 *et seq.*  The RESPA and HOEPA claims in particular focus on the conduct of Homecomings in negotiating the terms of the loan.

Palmer's ECOA claim in her Third Amended Complaint also incorporates additional allegations not found in the earlier Amended Complaint, namely that Homecomings' actions and policies were discriminatory on the basis of race and/or sex.  But Palmer has essentially ascribed a different motive to the same set of facts.  The facts essential to the ECOA claim are that Palmer, an African-American female, was charged a disproportionately high amount for a loan given her credit worthiness.  Palmer's failure to plead that she is an African-American woman in her Amended Complaint does not change the transaction on which her ECOA claim is based.  Unlike the original Complaint filed by Palmer, the Amended Complaint is based on Homecomings' conduct in negotiating the refinancing transaction, and Palmer's ECOA claim is also based on this conduct and transaction.  Accordingly, it relates back under the standard set forth in Rule 15(c).  Homecomings cannot plausibly claim it lacked notice of the ECOA claim given Palmer's explicit inclusion of the sentence—intentional or otherwise—stating that Palmer brought her case under several statutes *including the Equal Credit Opportunity Act*.  Am. Compl. ¶ 2.  Therefore, the ECOA claim alleged in the Third Amended Complaint relates back to the

Amended Complaint and is not barred by the two-year statute of limitations.

C.     **Failure to State an ECOA Claim**

Homecomings contends that Palmer's ECOA claim must be dismissed because the allegations in her Third Amended Complaint do not state a claim for relief under the statute and are too conclusory to show that her claim is plausible. *See* Def.'s Mem. at 6-8. Palmer disputes this and argues that she has properly pled a disparate impact claim under the ECOA.[2] *See* Opp'n at 5. The ECOA bars discrimination by creditors against any credit applicant "with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status." 15 U.S.C. § 1691(a). There appears to be agreement among the federal courts that disparate impact claims are permissible under the ECOA. *See Barrett v. H & R Block, Inc.*, Civ. Action No. 08-10157-RWZ, 2009 WL 2476526, at *2 (D. Mass. Feb. 6, 2009) ("Although the First Circuit has not decided whether disparate impact claims are permissible under the ECOA, the circuit courts and many district courts that have decided the issue have uniformly concluded that they are."); *see also A.B. & S. Auto Serv., Inc. v. S. Shore Bank of Chicago*, 962 F. Supp. 1056, 1060 (N.D. Ill. 1997) ("A credit applicant can prove discrimination under the ECOA

---

[2] Palmer does not argue that she is asserting a disparate treatment claim, and it is not apparent from the Third Amended Complaint that she intended to assert one. In her opposition brief, Palmer explicitly argues that she "states a disparate impact claim under the ECOA," defines the prima facie case for only a disparate impact claim, and never uses the phrase "disparate treatment." *See* Opp'n at 5-7. Although the Third Amended Complaint might possibly be construed to state a claim for disparate treatment, "[t]he court's role is not to act as an advocate for the plaintiff and construct legal arguments on [her] behalf in order to counter those in the motion to dismiss." *Stephenson v. Cox*, 223 F. Supp. 2d 119, 122 (D.D.C. 2002). Because Palmer is now represented by counsel (and was when she filed her Third Amended Complaint), the court has no obligation to construe her pleadings more liberally than she explicitly argues in her briefs. Accordingly, the Court does not consider whether the Third Amended Complaint may state a claim for disparate treatment under the ECOA.

by using any one of the following three different approaches used in the employment discrimination context: 1) direct evidence of discrimination; 2) disparate impact analysis, also called the 'effects' test; or 3) disparate treatment analysis.") The D.C. Circuit has not yet expressed an opinion on this question, but it has assumed without deciding that disparate impact claims are cognizable under the ECOA. *See Garcia v. Johanns*, 444 F.3d 625, 633 & n.9 (D.C. Cir. 2006).

In *Garcia*, the D.C. Circuit said that a disparate impact claim "would require a plaintiff to 'identify a specific policy or practice which the defendant has used to discriminate and must also demonstrate with statistical evidence that the practice or policy has an adverse effect on the protected group.'" *Id.* at 633 (quoting *Powell v. Am. Gen. Fin., Inc.*, 310 F. Supp. 2d 481, 487 (N.D.N.Y. 2004)). A plaintiff need not plead every element of a prima facie case of discrimination in order to survive a motion to dismiss. *Howard v. Gutierrez*, 571 F. Supp. 2d 145, 159 (D.D.C. 2008). However, the plaintiff must allege facts that, if true, would establish the elements of each claim. *Id.*

Palmer's disparate impact claim is first identified in paragraph 42 of her Third Amended Complaint:

> Homecomings designed, disseminated, controlled, implemented and profited from the discriminatory policy and practice alleged herein (the discretionary pricing policy adopted by Defendant and clearly delineated above) which has had a disparate economic impact on an African American female homeowner compared to similarly-situated males and/or Caucasians.

Third Am. Compl. ¶ 42. Palmer goes on to allege that "[a]s a result of Homecomings['] discretionary pricing policy, Homecomings has collected disproportionately more in finance charges from an American American female homeowner than from similarly-situated male

and/or Caucasian persons for reasons totally unrelated to credit risk." *Id.* ¶ 44.  Although Palmer claims that the "discretionary pricing policy adopted by Defendant" is "clearly delineated above," it is not overwhelmingly clear what Palmer is referring to as the "discretionary pricing policy." Initially, Palmer's ECOA claim appears to focus on the fact that Palmer was charged "inflated fees" that she believes were the direct result of discrimination in the origination and servicing of the loan.  *See id.* ¶¶ 37-40.  Those allegations, however, do not specifically identify any policy or practice as the source of the discriminatory impact.  However, Palmer does claim in paragraph 18 of her Third Amended Complaint that "Homecomings also has a policy or practice of not limiting or restricting the amount of the brokers' fees, and of not requiring that the brokers' fees bear any reasonable relationship to services provided to the consumer." *Id.* ¶ 18.  Although Palmer's description of the policy is not very elaborate, it is sufficient at this stage in the proceedings to survive a motion to dismiss.[3]

However, Palmer's disparate impact claim is deficient because it does not sufficiently plead a connection between the discretionary pricing policy and a disparate impact on a protected group.  Most significantly, Palmer only alleges a disparate impact on *herself*.  *See* Third Am. Compl. ¶¶ 42, 44.  She does not actually allege that Homecomings' policies have had a discriminatory impact on a whole protected class, nor does she allege any facts relating to the discriminatory impact of such policies.  At least one court in this District has dismissed a disparate impact claim where the plaintiff failed to allege any sort of statistical disparity.  *See*

---

[3] The Court notes that plaintiffs in other cases have also alleged disparate impact claims under the ECOA on the basis of the defendant's "discretionary pricing policy." *See, e.g.*, *In re Wells Fargo Residential Mortgage Lending Discrim. Litig.*, No. C 08-1930, 2009 WL 1771368, at *1 (N.D. Cal. June 19, 2009); *Barrett*, 2009 WL 2476526 at *3; *Miller v. Countrywide Bank, N.A.*, 571 F. Supp. 2d 251, 255-56 (D. Mass. 2008).

*Brady v. Livingood*, 360 F. Supp. 2d 94, 100 (D.D.C. 2004) ("Common sense and fairness . . . dictate that a plaintiff, at a minimum, allege *some* statistical disparity, however elementary, in order for the defense to have any sense of the nature and scope of the allegation the plaintiff is seeking to prove.")  Palmer's allegations simply do not amount to a claim of disparate impact under the ECOA.[4]

Because it appears that the deficiency in Palmer's Third Amended Complaint may be technical, i.e., she failed to allege that other African-American females were adversely affected by the allegedly discriminatory policy, the Court shall afford Palmer an opportunity to cure the defect.  Rather than immediately dismiss Palmer's ECOA claim, the Court shall hold in abeyance its ruling and allow Palmer to amend her pleadings to state a proper disparate impact claim under the ECOA if she has a good faith basis for doing so.  The Court shall only grant leave for Palmer to amend her pleadings for this limited purpose, and this shall be Palmer's final opportunity to state her ECOA claim.

### IV. CONCLUSION

For the foregoing reasons, the Court shall GRANT IN PART Defendant's [38] Motion to Dismiss Plaintiff's Third Amended Complaint with respect to Plaintiff's RESPA claim and HOLD IN ABEYANCE IN PART its ruling with respect to Plaintiff's ECOA claim.  The Court shall grant leave for Plaintiff to amend her pleadings to state a claim for disparate impact under

---

[4] Palmer attempts to supplement her allegations by attaching exhibits to her opposition brief indicating that Homecomings is under investigation by the Federal Trade Commission for possible ECOA violations.  Because a motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint, however, the Court does not consider these materials.  The Court notes, though, that Palmer's complaint would still be deficient even if Palmer had attached these exhibits to her complaint because her pleadings do not indicate that Homecomings' policies have impacted anyone other than herself.

the ECOA, and if Palmer fails to do so within the time set by the Court, the Court shall grant

Defendant's motion to dismiss the ECOA claim.  An appropriate Order accompanies this

Memorandum Opinion.


Date: January 6, 2009

                                                                */s/*
                                        **COLLEEN KOLLAR-KOTELLY**
                                        United States District Judge